In re Andrew A. NAPOLI, Debtor.

Sidney REITER, Plaintiff,

v.

Andrew A. NAPOLI, Defendant.

Bankruptcy No. 86–01676G.
Adv. No. 86–1041G.

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 10, 1988.

Scott M. Pollack, Frank & Pollack, Philadelphia, Pa., for plaintiff, Sidney Reiter.

Jay E. Goldfarb, Philadelphia, Pa., for debtor/defendant, Andrew A. Napoli.

Christopher G. Kuhn, Philadelphia, Pa., Trustee.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

The only issue remaining for decision in this case is plaintiff's claim that the defendant's debt to him is not dischargeable pursuant to 11 U.S.C. § 523(a)(4) due to defendant's alleged fraud or defalcation while acting in a fiduciary capacity. Insofar as the complaint stated a claim as to dischargeability under 11 U.S.C. § 523(a)(4) for embezzlement, the complaint has been withdrawn pursuant to stipulation of October 24, 1986. For the reasons set forth below in findings of fact and conclusions of law, judgment shall be entered on the complaint in favor of the defendant. Therefore, the discharge previously entered in this chapter 7 case shall encompass the defendant's debt to the plaintiff.

## FINDINGS OF FACT

1. During 1985, the defendant/debtor, Andrew Napoli, ("Napoli") was operating a business in New Jersey known as Capri Motor Sales, ("Capri"). Capri was in the business of buying and selling used cars.

2. In approximately June of 1985, Napoli made the plaintiff, Sidney Reiter, ("Reiter") a partner in Capri for $20,000.00. Reiter paid cash for the partnership.

3. The partnership was evidenced by a handwritten receipt, executed by Napoli, stating in its entirety

"Received from Sid Reiter $20,000 dollars, for partnership in sales of Capri Motors Used Cars from 5/1/85."

No other partnership agreement, documents, papers or contracts were ever executed by Napoli or Reiter.

4. Reiter testified that Napoli contributed approximately $10,000.00 in cash and inventory to the partnership as well as his knowledge of the used car business. (N.T. 10/8/86 pp. 15–16). Reiter himself had little or no knowledge related to used car sales.

5. Reiter further testified that he and Napoli agreed to divide profits and losses of Capri for the first year of the partnership on a 40–60 basis and thereafter on a 50–50 basis. Reiter stated that the reason for the unequal division for the first year was that Napoli knew the business and he did not. (N.T. p. 16). No evidence was presented as to any discussion or agreement about how assets were to be distributed in the event of dissolution.

6. During the period of the partnership, approximately May to August, 1985, the partnership had net profits of $6,713.00. *See* Plaintiff's Exhibit 2. During that same period, Reiter and Napoli drew $4,800.00 each from the business. During the existence of the partnership, Napoli had superior access to the checkbook and other assets of Capri.

7. In approximately August, 1985, Napoli unilaterally decided to dissolve the partnership. As of the date of dissolution, Napoli calculated the value of the assets of the partnership as $25,853.00, including six vehicles valued at $7,393.00 and $18,460.00 in cash. Reiter testified that he does not dispute the value which Napoli assigned to the partnership assets. (N.T. p. 20).

8. Napoli calculated Reiter's 40% share of the assets to be $10,341.00. He subtracted from that amount $1,343.00 which he calculated to be money in excess of that which Reiter had been entitled to draw as cash from the profits of the business. *See* Plaintiff's Exhibit 2.[1] After subtracting an additional unexplained $30.00, Napoli gave Reiter a check in the amount of $8,968.00.

9. Reiter did not cash the check immediately, instead commencing suit against Napoli in the district court for the Eastern District of Pennsylvania. There is no evidence in the record related to the results of the district court suit or the ultimate disposition of Napoli's check.[2]

10. On April 7, 1986, Napoli filed a bankruptcy petition under chapter 7 of the Bankruptcy Code. On October 8, 1986, a trial was held before former Chief Judge Goldhaber on Reiter's complaint seeking to have Napoli's discharge denied pursuant to 11 U.S.C. § 727(a)(2), (4) and (5). Judge Goldhaber dismissed that complaint after hearing testimony. The parties agreed to allow Napoli to go forward with his discharge hearing subject to resolution of this dischargeability complaint.[3] Subsequently, the parties stipulated that Reiter's dischargeability complaint based on an alleged $20,000.00 debt could be decided on the basis of the record made at the October 8, 1986 trial together with the briefs of the parties.[4]

---

1. The figures provided show that Napoli calculated Reiter's 40% of the net profit as $2,685.00. He subtracted this amount from the $4,800.00 actually drawn, leaving a net overdraft of $2,115.00. Napoli then credited Reiter with his own overdraft of $772.00, thus creating the $1,343.00 figure.

2. Although a district court order apparently granting partial summary judgment in favor of Reiter in the amount of $8,968.00 is attached as an exhibit to the complaint, neither the complaint nor the exhibit was introduced into the record. *See In re Aughenbaugh,* 125 F.2d 887 (3rd Cir.1942). Even if the district court order had been introduced, it would not alter the outcome of this proceeding, because a judgment order, without more, is insufficient to establish non-dischargeability of the debt evidenced by the judgment by virtue of collateral estoppel. *See In re McCall,* 76 B.R. 490 (Bankr.E.D.Pa. 1987).

3. An order of discharge, pursuant to 11 U.S.C. § 727, was apparently entered on December 11, 1986.

4. Although Judge Goldhaber conducted the relevant trial, the parties have consented to my making findings of fact and conclusions of law based on the record. *See* Bankr.Rule 9028 incorporating Fed.R.Civ.Pro. 63. *See also Arrow–Hart, Inc. v. Philip Carey Co.,* 552 F.2d 711 (6th Cir.1977). None of the findings or conclusions

11. The record contains insufficient evidence to establish the misuse of any assets of the partnership by Napoli, or of misrepresentation by Napoli of the value of any asset of the partnership upon dissolution. Furthermore, no evidence was presented concerning the reason why the partnership was dissolved.

## CONCLUSIONS OF LAW

1. 11 U.S.C. § 523(a)(4) provides that a discharge under 11 U.S.C. § 727 does not discharge an individual debtor from any debt:

> for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny.

The only issue Reiter has pursued in this case involves a claim of Napoli's fraud or defalcation while acting in a fiduciary capacity.

2. Pursuant to New Jersey law, partners do not stand in a fiduciary relationship to each other within the meaning of 11 U.S.C. § 523(a)(4).

3. Even if Napoli owed Reiter a fiduciary duty by virtue of their partnership, Reiter has not carried his burden of establishing fraud or defalcation by Napoli in connection with a debt owed by Napoli to Reiter so as to make that debt nondischargeable.

4. The record does not contain sufficient evidence to establish that Napoli misused or otherwise converted assets of Capri during the period of the partnership.

5. The record does not contain sufficient evidence to establish that Napoli misrepresented the value of partnership assets upon dissolution to Reiter's detriment.

6. The plaintiff has not demonstrated fraud or defalcation as required under 11 U.S.C. § 523(a)(4).

## DISCUSSION

█ As I stated recently in *In re Salamone*, 78 B.R. 74, 76 (Bankr.E.D.Pa.1987), 11 U.S.C. § 523(a)(4)

made rest on a determination as to the credibility of any witness.

provides for the nondischargeability of any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Collier explains that section 523(a)(4) creates an exception based on (1) fraud or defalcation while acting in a fiduciary capacity or (2) embezzlement or larceny while not acting in a fiduciary capacity. 3 *Collier on Bankruptcy* 523.14 (15th ed. 1987) ("Collier"). *Accord, In re Kapnison*, 65 B.R. 221 (Bankr.D.N.M.1986); *In re Talcott*, 29 B.R. 874 (Bankr.D.Kan.1983). Under the former ground, it is well established that the requirement that the debtor be acting in a fiduciary capacity refers to express trusts and not trusts *ex maleficio* which may be imposed due to the very wrongful act out of which the debt arose. *In re Lane*, 76 B.R. 1016, 1022 (Bankr.E.D. Pa.1987); *In re Kapnison; In re Gould*, 65 B.R. 87 (Bankr.N.D.N.Y.1986); *In re Kwiat*, 62 B.R. 818 (Bankr.D.Mass.1986); 3 *Collier* ¶ 523.14[1] at 523–93 to 523–96.

Thus, the existence of a fiduciary relationship in the form of an express trust is a prerequisite to a determination of non-dischargeability for fraud or defalcation under section 523(a)(4). *Accord, In re Ramonat*, 82 B.R. 714 (Bankr.E.D.Pa.1988).

In 1844, the Supreme Court of the United States narrowly defined the concept of fiduciary as it related to the Bankruptcy Act and that narrow definition has been carried over into section 523(a)(4) of the Code:

> "In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the [Bankruptcy Act]..... *The act speaks of technical trusts, and not those which the law implies from contract.*" (emphasis added).

*Chapman v. Forsyth*, 43 U.S. (2 How.) 202, 207, 11 L.Ed. 236 (1844). *See Lindley v. General Electric Co.*, 780 F.2d 797 (9th Cir.) *cert. denied*, 476 U.S. 1186, 106 S.Ct.

2926, 91 L.Ed.2d 554 (1986); *In re Lane*, 76 B.R. 1016 (Bankr.E.D.Pa.1987); *In re Taylor*, 58 B.R. 849 (Bankr.E.D.Va.1986); *Matter of Rausch*, 49 B.R. 562 (Bankr.D.N.J. 1985); *In re Holman*, 42 B.R. 848 (Bankr. E.D.Mo.1984).

■ At least two courts have held that no provision of the Uniform Partnership Law (adopted in New Jersey) creates the type of technical or express trust required to find the fiduciary relationship necessary as a prerequisite to a determination of non-dischargeability under section 523(a)(4). *Taylor; Holman. See also Lindley v. General Electric. But see, In re Kraus*, 37 B.R. 126 (Bankr.E.D.Mich.1984). These cases and a review of the Uniform Partnership Law as enacted in New Jersey, N.J.S. A. 42:1–1 et seq., lead me to conclude that relevant statutory law does not impose an express or technical trust on partners by virtue of the partnership relationship.

■ I recognize, however, that in some cases an express or technical trust can be imposed on partners by virtue of common law. *See Lindley v. General Electric.* In *Lindley* the Ninth Circuit held that the requisite fiduciary relationship between partners arose not under California statutory law which provided:

> [e]very partner must account to the partnership for any benefit and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property;

but rather under California common law stating:

> [p]artners are trustees for each other, and in all proceedings connected with the conduct of the partnership every partner is bound to act in the highest good faith to his co-partner and may not obtain any advantage over him in the partnership affairs by the slightest misrepresenta-

tion, concealment, threat or adverse pressure of any kind.

*Lindley* at 796. With regard to the California statutory provision, the court stated:

> under this statute, the trust arises only when the partner derives profits without consent of the partnership; it is the sort of trust *ex maleficio* not included within the purview of § 523(a)(4).

In New Jersey the courts have imposed a fiduciary duty on partners only for limited purposes analogous to the California statutory language, thus creating trusts among partners *ex maleficio* not subject to section 523(a)(4). In *Stark v. Reingold*, 18 N.J. 251, 261, 113 A.2d 679, 684 (1955) the court concluded that a partnership relationship imposed "a fiduciary duty to share [those] business opportunities which clearly related to the subject of their partnership business." *Accord Silverstein v. Last*, 156 N.J.Super. 145, 383 A.2d 718 (1978). This language creates a duty which is virtually identical to the duty of partners under the California statute which the Ninth Circuit concluded did not create an express trust relationship.[5]

I thus cannot conclude that New Jersey common law creates a general fiduciary relationship for partners for all purposes simply by virtue of the partnership relationship. Napoli did not owe Reiter any fiduciary duty by virtue of an express or technical trust. Consequently, Reiter can have no claim that Napoli's debt to him is nondischargeable based on fraud or defalcation pursuant to 11 U.S.C. § 523(a)(4).[6] *In re Ramonat.*

■ Even if I did find that Napoli stood in a fiduciary relationship to Reiter, I could not grant the relief requested here based on the evidence. Under § 523(a)(4), the plaintiff has the burden of proof. *See In re Lane; In re Somerville*, 73 B.R. 826 (Bankr.E.D.Pa.1987).

---

**5.** I decline to find that a broader fiduciary relationship among partners exists in New Jersey based on dicta alone found in *Stark* and elsewhere.

**6.** I do not pass on whether the debt at issue might be nondischargeable under some other provision of section 523. I note that the only ground asserted by plaintiff was 11 U.S.C. § 523(a)(4).

■ Although I sympathize with Mr. Reiter, because it certainly appears as though his arrangement with the debtor was unwise, I cannot find in the record proof of fraud or defalcation. Reiter's investment was 200% of that of Napoli in May, 1985. Three months later upon dissolution instigated by Napoli, Reiter received the equivalent of only 40% of the partnership assets.[7] The testimony indicated that Reiter had agreed to a 40–60 division of profits for the first year of operation, but no testimony or other evidence was presented as to any agreement on distribution in the event of dissolution. Although it appears that the distribution was unfair, I cannot conclude based on the record (in the absence of evidence that Napoli induced Reiter to form a partnership with intent to prematurely dissolve the partnership and thereby realize Reiter's investment) that any fraud or defalcation occurred by virtue of the fact that the assets were divided 40–60 rather than 50–50.

For the reasons stated above, an appropriate order shall be entered providing for judgment in favor of the defendant.

Alfred W. Crump, Ward & Crump, Reading, Pa., for movant.

Socrates J. Georgeadis, Wyomissing, Pa., for debtor.

Alan M. Seltzer, Ryan, Russell & McConaghy, Reading, Pa., Trustee.

---

7. Reiter's testimony that he did not dispute Napoli's valuation of the assets upon dissolution and the absence of any testimony whatsoever that assets were misappropriated suggests that Reiter's only dispute was premised upon receiving 40% of the assets rather than 50%. Additionally, the evidence established that the part-

ners invested approximately $30,000.00 in the partnership and earned $6,713.00 in profits. Distributions of $25,853.00 upon dissolution and $9,600.00 prior to dissolution is not significantly inconsistent with the partnership's investment and income. Thus, I cannot infer that Napoli converted partnership assets for his own use.