**In re Robert S. SCHULTZ, Debtor.**

**Charles EXNER, Plaintiff,**

**v.**

**Robert S. SCHULTZ, Defendant.**

**Bankruptcy No. 81–03157 T.
Adv. No. 82–2253.**

United States Bankruptcy Court,
E.D. Pennsylvania.

March 31, 1987.

---

Edward C. Toole, Jr., Nancy V. Alquist, Mary F. Walrath, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for plaintiff.

Geoffrey L. Steiert, Pincus, Verlin, Hahn & Reich, P.C., Philadelphia, Pa., for debtor.

Ellis Brodstein, Reading, Pa., Trustee.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Before the court is the complaint of the plaintiff, Charles Exner, objecting to the discharge of the debtor in his Chapter 7 case. In short, the plaintiff loaned approximately $54,000.00 to the debtor to help him

start his own construction business. These loans were evidenced by notes signed by the debtor and were not paid as of their due dates. The plaintiff argues that the debtor's discharge should be denied under five subsections of Section 727 of the Bankruptcy Code.[1] For the reasons hereinafter stated, we find that the debtor's discharge will be denied for violation of: (1) § 727(a)(2) resulting from the debtor's fraudulent transfer of an automobile, transfer of funds realized from the sale of certain properties, transfer of a mortgage post-bankruptcy, and the transfer of a handgun post-bankruptcy; (2) § 727(a)(3) for the failure to keep and/or preserve records; (3) § 727(a)(5) for the failure to explain satisfactorily, the loss of assets or deficiency of assets to meet the debtor's liabilities; (4) § 727(a)(4)(A) by making false oaths and; (5) § 727(a)(6) by the failure to obey this court's order.

On October 6, 1978, Charles Exner ("plaintiff") lent $27,000.00 to Robert S. Schultz ("debtor") to assist the debtor in establishing his own new home construction business.[2] The debtor signed a one-year note with interest at 10% per annum, due at the end of the term. The funds were deposited into a checking account of Professional Homes, Inc., a corporation of which Schultz and his wife were the sole shareholders and officers.[3]

The debtor purchased two lots on Orchard Lane, Colebrookdale Township, Berks County, Pennsylvania with the funds borrowed from the plaintiff.[4] The debtor thereafter obtained a $76,500.00 construction loan from First Federal Savings and Loan Association, which was secured by a first mortgage on the premises. The debtor built a home on each of the lots but encountered difficulty in selling the homes and was consequently unable to repay the plaintiff when the note became due.[5] Thereafter, the debtor and plaintiff agreed that the note would be repaid when the lots were sold. On May 23, 1980 Lot Number 14 was sold for $47,000.00 and on December 2, 1980 Lot Number 1 was sold for $43,000.00. The debtor realized a profit of $2,636.01 and $623.74 respectively.[6] Although the plaintiff requested repayment of the loan and documentation of construction costs to show what funds were realized at the time of the sale, the debtor failed to provide either the payment or the information requested.

In the interim, in the Fall of 1979, the debtor requested another business loan from the plaintiff on the same terms as the first loan.[7] The debtor purchased Lot 3 on Paper Mill Road for $11,500 or $12,000 using a part of the funds loaned to him by the plaintiff. The debtor also obtained a construction loan from First Federal secured by a first mortgage on the premises.[8,9]

On October 31, 1980, the home that the debtor had erected on Paper Mill Road was sold for $52,690. The debtor realized a profit of $20,062.03. The debtor did not repay any of the plaintiff's loans nor did he tell the plaintiff of the sale of the Paper

---

1. The plaintiff contends Sections 727(a)(2), 727(a)(3), 727(a)(5), 727(a)(4)(A), 727(a)(6) specifically were violated by the debtor.

2. The plaintiff has been in the construction industry for over 40 years with vast experience in operating his own construction business. The debtor was a subcontractor/carpenter that had worked for the plaintiff from time to time on certain projects since 1976.

3. The funds in this account were ultimately used for both business and personal expenses.

4. Lots Numbered 1 and 14.

5. Note due October, 1979.

6. The profit shown was after payment of taxes, settlement costs and the balance due on the construction loan from First Federal.

7. $27,000.00 for a term of one year at 10% per annum interest.

8. Although documents produced by the debtor evidence that the loan was for $37,000.00, in fact, only approximately $25,000.00 to $27,-000.00 was advanced.

9. During this time, the debtor also borrowed additional funds from: National Bank of Boyertown—$20,000.00; Robert E. Schultz (debtor's father)—$11,500.00 and $2,148.00; and from Helen Tangrady (debtor's mother-in-law)—$2,500.00. All of these loans were unsecured.

Mill Property.[10] The plaintiff, upon gaining knowledge of the sale, requested an explanation of the construction costs and distribution of the proceeds of the sale. No explanation was forthcoming. The debtor testified that $17,000 to $18,000 of the $20,062.03 received by him from the sale was used to pay outstanding subcontractor bills. Even after court direction to produce documentation to support that assertion, the debtor failed to provide an adequate summary of expenses. It is interesting to note that during this time, however, the National Bank of Boyertown was repaid $10,500, the debtor's father was repaid $2,148,[11] and his mother-in-law was repaid $2,500.[12] Exner received no part of the $54,000 due him.[13]

On March 16, 1979, the debtor purchased real estate on Lutz Road, Boyertown, Pennsylvania. The debtor contends that the money used for the purchase of this lot came from the proceeds of the sale of his former residence. Using a $45,000 construction loan from First Federal and other funds from the corporate checking account, the debtor constructed a home on the Lutz Road Lot. This home is now the residence of the debtor and his family.

On August 7, 1981, the debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code and the schedules and statement of affairs for an individual doing business. Those filings did not reveal that the debtor and his wife owned the Lutz Road property. On December 15, 1981, the debtor executed amended schedules which added the plaintiff as an unsecured creditor but still failed to reveal that the debtor had any interest in the real property located on Lutz Road.[14]

**10.** The plaintiff learned of the sale upon visiting the property some time after the sale and after the debtor filed his bankruptcy petition.

**11.** April 25, 1979.

**12.** December 13, 1978 and July 3, 1979 respectively.

**13.** This sum does not include interest owed.

**14.** These amended schedules were filed with the court on January 19, 1982.

On February 16, 1982, the meeting of creditors was held pursuant to § 341(a) of the Code. The trustee directed the debtor to amend the schedules further because of numerous inaccuracies and inconsistencies. Sometime after the § 341 meeting, the Trustee learned of the debtor's interest in the Lutz Road property. Consequently, the trustee directed the debtor, by letter, to amend his schedules, to account for the property and to explain his failure to include the Lutz Road property in his schedules. The debtor failed to file the amended schedules and failed to provide the trustee with the information requested.[15]

On August 6, 1987, this court entered an Order extending the time within which an objection to the debtor's discharge could be filed to a period of 30 days after the filing, by debtor, of an amended petition and schedules. On September 16, 1982, the plaintiff filed a complaint objecting to the debtor's discharge.[16] The plaintiff served upon the debtor discovery requests relating to his pre- and post-petition financial affairs. In response, the debtor offered incomplete and inadequate documents. A hearing was held on April 1, June 27 and July 1, 1985 in regard to the plaintiff's complaint. After the hearing, the court directed the parties to submit memorandum of law in support of their positions. On October 30, 1985, the debtor filed a motion for consideration of certain amended summary exhibits and memorandum. The plaintiff then filed a formal objection to debtor's motion.

We will first examine the debtor's motion to consider amended exhibits. We now grant that motion and admit into evidence the debtor's amended exhibits P–22 includ-

**15.** Although the debtor produced a third set of schedules at the hearing held April 1, 1985, those schedules were never filed with this court.

**16.** The plaintiff filed a second complaint objecting to discharge which contained additional grounds for the denial of debtor's discharge. Because of the pendency of the first complaint, which has neither been settled nor dismissed, this court, by Order dated February 21, 1985, dismissed the second complaint and directed the first complaint to proceed.

ing checks, check stubs and deposit slips of Professional Homes, Inc. The decision to reopen the record falls within the discretion of the trial court. As Professor Moore has stated:

> ... [the Court] should consider a motion to take additional testimony in light of all the surrounding circumstances and grant or deny it in the interest of fairness and substantial justice....

6A Moore's Federal Practice ¶ 59.04[13] at 36–37 (2d ed. 1974) (footnotes omitted). We believe that justice will be served by permitting the amended exhibit and foresee no prejudice to the plaintiff by this ruling.[17]

■ Next, we must consider the merits of plaintiff's complaint objecting to discharge. To sustain an objection to discharge pursuant to Section 727(a)(2), an objector must establish four elements:

> (1) that the act complained of was done at a time subsequent to one year before the date of filing of the petition; (2) with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of the property under the Bankruptcy Code; (3) that the act was that of the debtor or his duly authorized agent; (4) that the act consisted of transferring, removing, destroying or concealing any of the debtor's property, or permitting any of these acts to be done.

See 4 Collier on Bankruptcy ¶ 727.02 at 727–10 (15th ed. 1985). The plaintiff alleges that the debtor transferred two automobiles to the debtor's father within one year of the debtor's filing bankruptcy. The debtor testified that the transfer was *not* consideration[18] for the money previously borrowed from his father.[19] The only plausible explanation for the transfer was the debtor's attempt to insulate these assets from the claims of creditors.

Section 727(a)(2) of the Bankruptcy Code provides:

> (a) The court shall grant the debtor a discharge, unless—
>
> * * * * * *
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> (A) property of the debtor, within one year before the date of the filing of the petition; or
>
> (B) property of the estate, after the date of the filing of the petition; ...

11 U.S.C. § 727(a)(2). The plaintiff has sustained his burden of showing that the transaction was a fraudulent transfer within the meaning of Section 727(a)(2). That is sufficient, by itself, to deny the debtor's discharge.

The plaintiff also contends that the debtor failed to list the funds received from the sale of the home on Paper Mill Road[20] or funds received from the sale of Lot 1, Orchard Lane[21] in his schedule of assets at the time of filing. The debtor argues that $17,000 to $18,000 was paid to subcontractors for work done on the Paper Mill project. Despite numerous requests made by the plaintiff, the trustee and the court, the debtor failed or refused to supply adequate information to explain the distribution of these assets. Again looking to Section 727(a)(2), the debtor has hindered, delayed and defrauded the creditors by the transfer and/or concealment of the funds realized from the sale of the aforementioned properties. Further, the debtor has caused further hindrance and delay by the concealment of documents which would al-

---

**17.** An appropriate Order will be entered.

**18.** Even if the transfer of the automobiles were in consideration for a reduction of Schultz's debt to his father, that transaction would be avoidable as a preferential transfer to an insider. *cf.* 11 U.S.C. § 547(b).

**19.** The debtor failed to show any adequate consideration given for the transfer.

**20.** The sale took place, October 31, 1980, for the amount of $20,062.03. (within one year of the filing of the bankruptcy petition)

**21.** The sale took place on or about December 2, 1980 in the amount of $623.74. (within one year of the filing of the bankruptcy petition)

low creditors and the court to assess these transactions. We can draw only one conclusion from these circumstances, namely, that the debtor intended to defraud his creditors. This, then, represents another independent basis for denial of his discharge.

On or about December 2, 1981, after the filing of the bankruptcy petition, the debtor granted a mortgage in his Lutz Road home to the National Bank of Boyertown.[22] This mortgage was granted without the permission or knowledge of the court, the Trustee or the creditors. Further, the mortgage was granted to secure a previously unsecured pre-petition loan. Again, in the absence of consideration, we must hold that this transfer is another attempt to defraud creditors. Such an act requires the court to deny the debtor's discharge pursuant to Section 727(a)(2).

Furthermore, the debtor listed a handgun as an asset on his schedules and amended schedules. This asset was not claimed by him as an exempt item and clearly constituted property of the estate under Section 541 of the Code. The debtor did not report the sale of the gun to the trustee, nor did he turn over the proceeds of the sale to the trustee. We conclude that this post-petition, unexplained transfer, made without court permission, was yet another attempt to defraud creditors. We hold, therefore, that this infraction of Section 727(a)(2) warrants denial of the debtor's discharge.

The plaintiff contends that the debtor has failed to keep or preserve records from which the debtor's transactions might be ascertained. Section 727(a)(3) bars the discharge of a debtor who fails to maintain adequate records. This section provides:

(a) The court shall grant the debtor a discharge, unless—

\* \* \* \* \* \*

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records and papers, from which the debtor's fi-

nancial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case; ...

11 U.S.C. § 727(a)(3).

■ Section 727(a)(3) is intended to allow creditors and/or the trustee to examine the debtor's financial condition and determine what has passed through a debtor's hands. *In re Esposito*, 44 B.R. 817 (Bankr. S.D.N.Y.1984). The creditors are entitled to written evidence of the debtor's financial situation and past transactions *Broad National Bank v. Kadison*, 26 B.R. 1015 (D.N.J.1983). Maintenance of such records is a prerequisite to granting a discharge in bankruptcy, *Kadison,* supra. *See also In re Borron*, 29 B.R. 122 (Bankr.W.D.Mo. 1983), unless the debtor justifies his failure to keep such records. *In re Ellison*, 34 B.R. 120 (Bankr.M.D.Ga.1983). The debtor's records need not be perfect, but must be kept in an "intelligent fashion." *In re Kottwitz*, 42 B.R. 566 (Bankr.W.D.Mo. 1984). Those records must at least reasonably allow for reconstruction of the debtor's financial condition to meet the requirements of the Bankruptcy Code. *In re Belk*, 44 B.R. 793 (Bankr.S.D.Fla.1984).

■ It is abundantly clear that the debtor, in this case, has failed to meet the requirement of the Code in this regard. The debtor not only failed to keep any type of general ledger, employee record or separate record of costs of each construction project, he also failed to keep tax records, insurance documents or records of expenses. It seems incredible that no record of any cost control was maintained. Whether the debtor concealed these records or plainly failed to keep them, does not matter. Both are violations of Section 727(a)(3) which constitute an additional ground for denial of the debtor's discharge.

The debtor contends that his financial condition can be ascertained from the cancelled checks in his corporate checking account. This court had much difficulty in making any sense of these documents,

---

**22.** In the amount of $11,322.00.

when produced.[23] The debtor himself was unable to provide support for his assertion that $17,000 of the proceeds from the sale of Paper Mill Road went to subcontractors for work done on that property. Although this court allowed the debtor to amend a summary exhibit and such amendment consists of copies of all checks and of all check stubs for the Professional Homes, Inc. account, a summary of all of the checks, a summary of receipts of the business and disbursements, and all available documentation of deposits, this information is not sufficient to give the creditors, Trustee, or the court the ability to determine the debtor's financial condition.

The next inquiry which must be made under Section 727(a)(3) is whether the debtor's complete failure to keep records is excused. The debtor could not explain why he failed to keep records. He simply testified that he was "a pretty poor record keeper" (N.T. 1 at 19, 141–42). Hence, we conclude that debtor's failure to maintain adequate records, combined with the fact that he has offered no justification for his conduct, requires this court to deny the debtor's discharge pursuant to Section 727(a)(3).

 Additionally, the plaintiff contends that the debtor's discharge must be denied under Section 727(a)(5) of the Code for his failure to explain the loss of assets or deficiency of assets to meet the debtor's liabilities. Section 727(a)(5) provides:

(a) The court shall grant the debtor a discharge, unless—

\* \* \* \* \* \*

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities, ...

11 U.S.C. § 727(a)(5). The plaintiff specifically points out that the debtor once had in its possession two cars and more than $20,-000, realized from the sale of Paper Mill Road and Lot 1 on Orchard Lane which are now not available for distribution to creditors. Debtor's statements that the cars were transferred to his father for the use of a car and that the funds in question were used to pay contractors, without supporting documentation, is insufficient to satisfactorily explain this loss of assets. The debtor had many chances to explain this disappearance of assets. His failure to do so requires the court to deny the debtor's discharge under Section 727(a)(5).

 This court also finds that the debtor's discharge should be denied pursuant to Section 727(a)(4)(A), which provides:

(a) The court shall grant the debtor a discharge, unless—

\* \* \* \* \* \*

(4) the debtor knowingly and fraudulently, in connection with the case—

(A) made a false oath or account;
...

11 U.S.C. § 727(a)(4)(A).

In order to sustain an objection to discharge under this section, it must be established that the debtor made a false oath or account knowingly with the intent to defraud his creditors. See generally, 4 Collier on Bankruptcy ¶ 727.04 at 727–47 (15th ed. 1985). This false oath must relate to a material fact. *In re Braidis*, 27 B.R. 470, 472 (Bankr.E.D.Pa.1983). The debtor made materially false statements in his omission of his interest in the Lutz Road property on the schedules filed with this court. Further, the debtor failed to list on his schedules, assets owned by him as of the petition date including: (1) household goods, supplies and furnishings, (2) books, (3) wearing apparel, jewelry and other personal possessions, and (4) business equipment. The debtor also failed to reveal the transfer of the paper Mill Road property and Lot 1, Orchard Lane in his statement of affairs. These omissions have directly hindered and delayed the trustee in the administration of this estate. Even after instruction from the trustee to file amended schedules to

---

**23.** The debtor was directed by the court on the first day of trial to produce a summary of the checks and other documents which the debtor asserted supported his contention. (N.T. 1 at 153). The summary produced by the debtor at the second day of trial (nearly 3 months later) was wholly inadequate for purposes under 11 U.S.C. § 727(a)(3).

rectify the omissions, the debtor failed to comply. The debtor's failure, after such direction, confirms that the aforementioned omissions were intentional on the debtor's part. The debtor has offered no satisfactory explanation for his actions or lack thereof. Consequently, the debtor's discharge will be denied pursuant to Section 727(a)(4)(A).

In addition, the debtor, under oath, at his Section 341(a) meeting of creditors stated that his schedules were true and correct. Those schedules failed to reveal that the debtor had an interest in the real estate that constituted his principal residence. The debtor's false statement is a sufficient basis for denial of his discharge. Furthermore, at the trial of this matter on April 1, 1985, the debtor made false statements regarding the number of construction projects the debtor had completed as "Professional Homes, Inc." and his interest in the Lutz Road property (N.T. 1 at 10–14). The debtor also gave conflicting testimony as to the existence of a personal checking account (compare N.T. 1 at 29 to N.T. 2 at 58). The debtor also testified that a certain document represented business expenses [24] when, in fact, it was shown to contain personal expenses (N.T. 2 at 49, 52–53, 56). This string of false and misleading statements indicates the debtor's intent to deceive his creditors and mandates the denial of discharge by this court pursuant to Section 727(a)(4)(A).

 The debtor's discharge should also be denied because of his continuing lack of cooperation. This court, by Bench Order,[25] directed the debtor to file amended schedules that fully and accurately reveal his financial affairs. To date, the debtor has not filed such amended schedules nor has he given any justification for his failure to do so. Pursuant to Section 727(a)(6):

(a) The court shall grant the debtor a discharge, unless—

\* \* \* \* \* \*

(6) the debtor has refused, in the case—

(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;
. . .

11 U.S.C. § 727(a)(6). The debtor failed and continues to fail to obey that order. That failure mandates denial of debtor's discharge in accordance with § 727(a)(6).

Section 727 of the Code is the heart of the fresh start provisions of bankruptcy law. The provisions denying a discharge to a debtor are generally construed liberally in favor of the debtor and strictly against the creditor. *In the matter of Decker*, 595 F.2d 185, 20 C.B.C.2d 173 (3d Cir.1979). However, "while the law favors discharges in bankruptcy, it will not ordinarily tolerate the debtor's intentional departure from honest business practices where there is a reasonable likelihood of prejudice." *Kentile Floors, Inc. v. Winham*, 440 F.2d 1128 (9th Cir.1971). The court in *Northern Trust Co. v. Garman (In the Matter of Garman)*, 625 F.2d 755 (7th Cir.1980) (act case), stated:

> We believe the Act was meant to discharge only the *honest* debtor from his debts and that the Act should be liberally applied to protect the bankrupt only where there is no intent to violate its provisions.

We hold that the debtor, in the case at hand, has made intentionally false statements and omissions in order to deceive his creditors and to delay or hinder the administration of his estate. In addition, he has chosen not to obey Orders of this Court. Therefore, in consideration of all of the aforementioned, specific violations of Section 727 set forth herein, this court will deny the debtor's Chapter 7 discharge in bankruptcy.

---

**24.** This document is Exhibit P–22 and was produced in response to the Court's Order that the debtor explain loss of assets.

**25.** April 1, 1985.