In re C. Harry KENT, M.D., Debtor.

Douglass E. WENDEL,
Trustee, Plaintiff,

v.

C. Harry KENT, M.D., Defendant.

Bankruptcy No. 87–04322–BKC–TCB.
Adv. No. 88–0309–BKC–TCB–A.

United States Bankruptcy Court,
S.D. Florida.

Sept. 22, 1988.

Douglass E. Wendel, trustee.

Robert C. Furr, Boca Raton, Fla., for trustee.

Stroock & Stroock & Lavan, Leroy Culton, Miami, Fla., for defendant.

Ackerman, Bakst, Gundlach, Lauer & Zwickel, P.A., West Palm Beach, Fla., for Harbor Federal Sav. & Loan.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Chief Judge.

The plaintiff trustee opposes the debtor's discharge under 11 U.S.C. § 727(a)(4)(A) and (D) and (a)(5). The debtor has answered and the matter was tried on August 23.

On April 29, the day after the initial creditors' meeting, a month after this chapter 11 case was voluntarily converted to chapter 7 and the trustee was appointed, the trustee made a written request for 25 sets of documents to be furnished by May 9.

In view of the extent and complexity of the debtor's business, which had been conducted through a professional association, a corporation, and a partnership, the request was reasonable.

The debtor is a physician specializing in radiation oncology who owned and operated five cancer treatment centers in three States. Each center was staffed with a resident physician and technicians. The revenue from the centers was collected by C. Harry Kent, M.D., P.A., which also funded the five centers. Kent, P.A., is wholly owned by this debtor and is also in bankruptcy.

For the fiscal year immediately preceding bankruptcy, the total income of Kent, P.A. exceeded $3.1 million.

Kent, P.A. was served by Physicians Computer Services, Inc. owned by this debtor (and possibly his wife), and by Medicenter Laboratories, a partnership, of which the debtor was a partner. Neither of these last two entities is in bankruptcy. The debtor's interest in these entities was not disclosed in his bankruptcy schedules.

Debtors are under a statutory mandate to:

"cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties ... [and to] surrender to the trustee ... any recorded information, including books, documents, records, and papers relating to property of the estate." § 521(3) and (4).

The trustee's request fell within these parameters and the debtor has neither questioned the reasonableness of the request nor said he was unable to comply.

Only 10 of the items were furnished by the specified date. When this complaint was filed, two months later, the debtor had furnished two more. By the trial date, three months after the specified date, he had furnished four more and partially furnished another three.

The debtor has never produced any part of requests 5, 10, 12, 13, 15, or 17 and has only partially complied with requests 1, 16, and 22 and has offered no excuse for his failure to do so.

### Amendment of Complaint

Because of the debtor's delayed and incomplete delivery of records requested by the trustee, the trustee's complaint was accompanied by a motion (CP 3) to permit later amendment to add additional grounds. The motion was deferred to trial (CP 7).

At trial the trustee asserted no new count, but merely requested leave to add 11 more omissions from the debtor's scheduled assets to the two omissions specifically identified in paragraph 7 of the complaint. The two alleged omissions were the debtor's bank accounts and the debtor's stock in Physician's Computer Services, Inc. The 11 additional omissions are itemized in the trustee's written argument (CP 20 at 10). Each of these items had surfaced during pretrial discovery.

At the trial, the debtor waived objection to this further particularization[1], and the trustee's motion is granted.

### § 727(a)(2)(A)

■ This subsection denies discharge to a debtor who has:

"knowingly and fraudulently, in or in connection with the case (A) made a false oath or account."

In his sworn bankruptcy schedules, the debtor failed to disclose 13 property interests. These range from his ownership interest in two corporations and two partnerships to a 34′ motorhome. The debtor's explanation is that the omissions were due to mere inadvertence caused by stress because of his financial condition, and not to a scheme to defraud creditors. As evidence of his good faith, he argues that in subsequent oral examination under oath, he acknowledged each of these property interests. (CP 19 at 7).

The number and nature of the omissions make it impossible for me to accept the debtor's explanation. To give but one representative example: the first category of documents requested by the trustee was the financial statements of the debtor and Kent, P.A. for the four years before bankruptcy. The debtor has produced none, but eight months after bankruptcy the trustee obtained the debtor's July 1, 1987 financial statement from the debtor's accountant during a deposition in Tampa. (Ex 1, document 12).

That statement included as an asset a Japanese art collection worth $175,000. The schedules make no reference to the art collection. At trial, nine months after bankruptcy, the debtor explained for the first time that he had never paid for the Japanese art and that he returned the collection to "the owner" within the year before his bankruptcy. (CP 21 at 66–67 and 76–77). The schedules require disclosure of all transfers or repossessions occurring within the year before bankruptcy. This asserted transfer was not disclosed.

The belated disclosure of the asset and the debtor's transfer of that asset, undisclosed until the trial, made it impossible for the trustee to verify the debtor's explanation and may jeopardize the trustee's recovery under § 547 of an apparent preferential transfer.

If this debtor had failed to reveal only this one asset, his excuse that he forgot might be tenable. However, he also failed to disclose his bank accounts, his ownership of two corporations, Persian rugs worth $65,000, jewelry worth $275,000, a porcelain and crystal collection worth $90,000, two cars worth $75,000, and a partnership interest worth $108,000. Only his mother could believe that he forgot all of this property.[2]

This was not an uneducated, sick or infirm debtor with a language problem who hastily swore to papers he claims to have been erroneously prepared for him by inexperienced counsel. This successful physi-

---

1. "MR. CULTON [debtor's attorney]: My position on this is quite simple. To the extent that Mr. Furr does not intend to amend his counts, if that is what Mr. Furr is saying, I have no objection to proceeding. To the extent that any of the allegations he wishes to add into the record is an amendment in the form of a different count, you Honor, I clearly object to it." (CP 21 at 4).

2. The ownership and value estimates are from the debtor's July 1, 1987 financial statement. Plaintiff Ex. 1, document 12.

cian, who also has an accounting degree, is alert and in apparent excellent health. He not only has the benefit of outstanding counsel but also his longtime personal C.P. A. He has never suggested that he was misled or confused by the required bankruptcy schedules.

His schedules were filed a month after bankruptcy and were not signed by the debtor until later. They were amended six months later but only to add additional creditors.

The debtor was able to and did disclose in his schedules:

"literally hundreds of creditors with respect to transactions involving millions of dollars worth of property." (CP 19 at 7). Yet he claims to have forgotten 13 assets he saw and dealt with daily. Omitted creditors' claims are not discharged. § 523(a)(3). The debtor's memory was infallible, therefore, when it served his purpose and faltered only when he was required to divulge his assets.

■ I am convinced that the debtor deliberately omitted these assets (and very probably others) with the hope that they would be overlooked by the trustee. I also doubt the debtor's present protestation that some of these assets have little or no value, but the value of omitted assets is irrelevant.

As stated in *In re Chalik*, 748 F.2d 616, 618 (11th Cir.1984):

"The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious. *Diorio v. Kreisler–Borg Construction Co.*, 407 F.2d 1330 (2d Cir.1969). It makes no difference that he does not intend to injure his creditors when he makes a false statement. Creditors are entitled to judge for themselves what will benefit, and what will prejudice them. *Morris Plan Industrial Bank v. Finn*, 149 F.2d 591, 592 (2d Cir.1945). See *Duggins v. Heffron*, 128 F.2d 546, 549 (9th Cir. 1942). The veracity of the bankrupt's statements is essential to the successful administration of the Bankruptcy Act. *Diorio*, 407 F.2d at 1331."

In *Chalik* as here, the debtor subsequently revealed the omitted information. 748 F.2d at 617. The denial of Chalik's discharge was affirmed.

I find that the debtor knowingly and fraudulently made a false oath in this case with respect to each of the 13 assets he failed to disclose in his bankruptcy schedules. For this reason, discharge must be denied under § 727(a)(4)(A).

### § 727(a)(4)(D)

■ This subsection denies discharge to a debtor who has:

"withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs."

The six categories of documents identified above, which were first requested in April and which have never been furnished by the debtor, all relate to the debtor's property or financial affairs.

The debtor argues only that the trustee never visited the debtor's place of business or reviewed any documents kept there and that the trustee's attorney made only one visit there but spent less than an hour and looked at almost none of the records. (CP 19 at 3–4).

In a criminal proceeding, the police and the prosecutor must ferret out the evidence they need and the accused is under no duty to assist them. This is not a criminal proceeding and the debtor is not standing behind the Fifth Amendment.

■ In bankruptcy, the debtor is under an affirmative statutory duty to assist the trustee. § 521(3) and (4). The trustee is not required to play detective and is not provided the resources to do so. It is not enough for the debtor to make available eight file cabinets of records (CP 21 at 36) and invite the trustee or his attorney to help themselves.

Had the debtor on May 11 made available to the trustee's counsel all of the requested documents, as the debtor now argues (CP 19 at 3–4), he would indeed have met his statutory obligation. However, he did no such thing. The evidence is undisputed that the debtor's office manager who assembled the records for the May 11 visit was asked by the debtor to gather together only one of the 25 sets of documents which the trustee had requested. She was never shown the trustee's request. (CP 21 at 40–41). There is no evidence that she made available any of the remaining 24 requested documents.

I am convinced that the debtor deliberately withheld or delayed the production of records in the hope that the trustee would abandon his investigation.

I find that the debtor knowingly and fraudulently withheld from the trustee the identified records. For this reason, discharge must also be denied under § 727(a)(4)(D).

### § 727(a)(5)

■ This subsection denies discharge to a debtor who:

"has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

The debtor's personal financial statement of July 1, 1987 showed a net worth of $4.8 million. His bankruptcy occurred five months later. As of that date he admits assets of only $3.7 million and claims a *negative* net worth of $4.1 million.

The debtor's only explanation is that his financial statement was exaggerated.

I find that he has failed to explain satisfactorily the precipitous erosion of his assets and his net worth. For this reason, discharge must also be denied under § 727(a)(5).

As is required under B.R. 9021(a), a separate judgment will be entered denying dis-

charge under § 727(a)(4)(A) and (D) and (a)(5).