In re John S. TRINSEY, Jr., Debtor.

**NASSAU SAVINGS AND LOAN ASSOCIATION, Plaintiff,**

v.

**John S. TRINSEY, Jr., Defendant.**

Bankruptcy No. 88–10694S.
Adv. No. 89–1171S.

United States Bankruptcy Court,
E.D. Pennsylvania.

April 27, 1990.

Leonard Goldberger, Philadelphia, Pa., for plaintiff.

John S. Trinsey, Jr., Royersford, Pa., debtor pro se.

Stephen Raslavich, Philadelphia, Pa., for trustee.

Edward Cohen, Philadelphia, Pa., former counsel for debtor.

### ADJUDICATION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. FINDINGS OF FACT

1. The instant proceeding was filed on December 20, 1989, by NASSAU SAVINGS AND LOAN ASSOCIATION ("the Plaintiff"), which asserts a claim of over $9 million against the Debtor, pursuant to 11 U.S.C. § 727(c)(1), objecting to the discharge of the Debtor, JOHN S. TRINSEY, JR. ("the Debtor"), on the basis of 11 U.S.C. § 727(a)(2)(B), (a)(3), (a)(4)(A), (a)(4)(C), (a)(4)(D), and (a)(5).

2. The bankruptcy case underlying the instant proceeding was commenced as an individual Chapter 11 case on March 2, 1988, in which the Debtor was represented by Edward Cohen, Esquire, an experienced bankruptcy practitioner ("Cohen"). On November 28, 1988, Cohen filed a "Withdrawal of Counsel," and the Debtor has since appeared *pro se*.

3. At the time of the filing of this case, the Debtor was the principal of a corporation then also a debtor-in-possession in Chapter 11 in this court, Gulph Woods Corporation, Bankr. No. 87–03093S ("Gulph"). On April 11, 1988, this court filed a lengthy Opinion reported at 84 B.R. 961, *aff'd*, C.A. No. 88–4081 (E.D.Pa. Feb. 24, 1989), supporting Orders denying confirmation of Gulph's proposed plan and conditionally granting the Plaintiff's motion for relief from the automatic stay to allow it to foreclose upon Gulph's principal asset, a real estate parcel known as Rebel Hill, in a federal district court foreclosure proceeding ("the Gulph Opinion").

4. On March 7, 1989, the Plaintiff filed an adversary proceeding, Adv. No. 89–0175S ("Adv. P. # 1"), seeking, *inter alia*, to enjoin the Debtor from continuing to accept and expend large sums of money without having obtained prior approval from this court to either borrow funds or expend funds for any purpose.

5. At a hearing of March 9, 1989, on the Plaintiff's motion for a preliminary injunction in Adv. P. # 1, the Debtor admitted receiving and spending more than $600,000 between April 19, 1988, and March 9, 1989, in efforts to unsuccessfully appeal or otherwise attack the effect of the Gulph Opinion, without court approval. The Debtor attempted to justify this conduct as permissible because the funds were allegedly received as "gifts" from Alan J. Kirsch ("Kirsch") and his associate, William Clarke ("Clarke"). An earlier attempt of Kirsch and Clarke to purchase Rebel Hill through a new corporate entity, Radnor Woods Corp. ("RWC"), was denied in a Memorandum of December 13, 1988, due to the collusion of these parties with the Debtor regarding their mutual involvement in future development of Rebel Hill. We thereupon entered a Preliminary Injunction on March 9, 1989, prohibiting the Debtor from continuing to receive and expend funds without court approval, clarified shortly thereafter to allow the Debtor to make expenditures for ordinary living expenses. This order was affirmed at C.A. No. 89–1998 (E.D. March 17, 1989), and No. 89–1231 (3d Cir. May 4, 1989).

6. On March 16, 1989, in light of the revelations at the hearing of March 9, 1989, and upon motion by the United States

Trustee, we appointed Maurice W. Baehr ("the Trustee") as the Trustee in the Debtor's individual Chapter 11 bankruptcy case. On August 17, 1989, we converted both this case and the Gulph case to Chapter 7 cases. The Trustee remained as Chapter 7 Trustee in the Debtor's case and Mitchell W. Miller, Esquire, was appointed as Chapter 7 Trustee in the Debtor's case.

7. In response to the Complaint filed in this proceeding, the Debtor filed an Answer including attacks upon (1) the district court's marshal sale of Rebel Hill subsequent to the foreclosure action; and (2) the Plaintiff's apparent efforts to sell Rebel Hill to Kirsch and Clarke subsequent to its purchase of that property at the marshal sale, and demanding a jury trial in this proceeding. The counterclaims and jury demand were summarily dismissed at trial. See Conclusion of Law 1, page 89 *infra.*

8. The Trustee testified at the trial of this proceeding, conducted on February 8, 1990, that he met with the Debtor at the Rebel Hill site shortly after his appointment; requested from him copies of all of his personal and business records, keys, insurance policies, and other documents; and was initially told by the Debtor that these documents were elsewhere, but would be supplied to him forthwith. However, the Trustee testified that the Debtor has never, to this day, delivered any records or documents to him despite numerous subsequent requests by the Trustee. The Trustee thus characterized the Debtor's actions as evasive of his requests and entirely uncooperative with his efforts to administer his estate.

9. The Debtor testified that he gave certain check receipts to the Trustee and contended that all of his other records were either in the possession of other parties, notably the Plaintiff, who allegedly seized them while it was in possession of Rebel Hill, or were turned over to the Trustee and must have been lost by him.

10. On July 7, 1989, the Plaintiff conducted a deposition of the Debtor in connection with Adv. P. # 1, and, as a result, received receipts, stubs, bank statements and other documents, none of which were ever turned over to the Trustee despite their obvious existence. Copies of these documents fill a binder of several hundred pages. This binder was admitted into evidence as a Plaintiff's exhibit at the trial of this proceeding.

11. Summarizing the contents of this binder, the Plaintiff ascertained that $124,149.15 was received by the Debtor personally from Kirsch and Clarke between April, 1988, and March 9, 1989. Documentation for expenditure of $52,619.49 of this sum was produced. Of the remaining sum of $71,529.66, $40,940.28 was documented only by checks drawn to the Debtor personally between July, 1988, and March, 1989, and the remaining $28,589.38 was entirely undocumented.

12. The Debtor did not dispute the accuracy of any of the specific documents in this binder or the Plaintiff's calculations. He attributed his expenditures of $71,529.66 in a period of about 11 months to a lump-sum remittance of $21,000 to certain counsel (although he became confused as to which, and neither counsel mentioned has been appointed to represent the Debtor in this case); maintenance of dependents (although he initially suggested a need to support eight children and six grandchildren, he finally conceded that only five children, aged 10 through 18, lived with him during the year in question); rent for his residence (although he admitted that his wife owns the family residence, apparently free and clear of mortgages); unspecified luxury-car rental payments; telephone bills of $500 to $600 monthly, the justification of the magnitude of which was not clearly explained; and preparations to run for nomination as the Governor of Pennsylvania. No receipts documenting any of these expenditures were produced by the Debtor.

13. The Debtor failed to list a condominium located in Wildwood, New Jersey, as property owned by him on his schedules. This omission was attributed by the Debtor to his contention that the property was owned by him and his non-debtor wife by the entireties and hence was not property of his estate which he was obliged to list on

**89**

his Schedules. We note that, although Cohen and the Trustee ultimately became aware of the condominium and its ownership, they never sought to amend the Debtor's schedules to add it thereto.

14. The Debtor's post-trial submissions are in the typical style of his large volume of pro se filings. In language containing scandalous attacks on this court and all other courts which have heard his matters and consistently rejected his claims, the substantive thrust of the submissions are attacks on the validity of the Order of March 9, 1989, in Adv. P. #1, and the Gulph Opinion, both of which have long since been finally decided against the Debtor, and claims of improprieties in the marshal sale conducted under district court order. No mention of post-trial attempts to supply the Trustee with any records or to account for the expenditure of the $71,-529.66 (other than to suggest that do so is tantamount to requiring him to unreasonably account for all of his living expenses, *e.g.*, every purchase of bread, etc.), is provided in the post-trial submissions.

15. To the extent that the Debtor has attempted to deny or to justify his failure to produce records to the Trustee or his failure to account for his expenditures of $71,529.66 for his and his family's "living expense" in an 11–month period, as opposed to evading the specific opportunities which the court attempted to provide to the Debtor to give explanations for such expenditures at trial, the testimony of the Debtor was patently incredible. However, we do conclude that the Debtor mistakenly, rather than intentionally, omitted disclosing his partial ownership of the Wildwood condominium on his Schedules.

## B. CONCLUSIONS OF LAW

1. The instant proceeding, reciting objections to the Debtor's discharge, is a core proceeding, 28 U.S.C. § 157(b)(2)(J), which this bankruptcy court must both hear and determine. 28 U.S.C. § 157(b)(1).

The Debtor's attempt to inject matters other than the issue of the Plaintiff's objections to discharge into this proceeding are not well-taken and must be dismissed. A bankruptcy court must confine itself, in a proceeding attacking a discharge, to that issue alone. *Cf. In re Black*, 95 B.R. 819, 824–25 (Bankr.M.D.Fla.1989); *In re Pattie*, 92 B.R. 521, 523 (Bankr.M.D.Fla.1988); and *In re Stelweck*, 86 B.R. 833, 844–45 (Bankr. E.D.Pa.1988), *aff'd sub nom. United States v. Stelweck*, 108 B.R. 488 (E.D.Pa. 1989).

As the nature of the claim and the relief sought is equitable in nature, there is no right to a jury trial in such a proceeding. *See, e.g., Granfinanciera v. Nordberg*, — U.S. —, 109 S.Ct. 2782, 2790–94, 106 L.Ed.2d 26 (1989); *In re Johnson*, 110 B.R. 433, 434 (Bankr.W.D.Mo.1990); *Stelweck, supra*, 86 B.R. at 845; *In re Schmid*, 54 B.R. 520 (Bankr.E.D.Pa.1985); and *In re Alvarez*, 26 B.R. 295, 296 (Bankr.S.D.Fla. 1982).

2. The specific Code sections invoked by the Plaintiff, 11 U.S.C. § 727(a)(2)(B), (a)(3), (a)(4)(A), (a)(4)(C), (a)(4)(D), and (a)(5), provide as follows:

(a) the court shall grant the debtor a discharge, unless—

. . . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

. . . . .

(B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

.   .   .   .   .

(C) gave, offered, received, or attempted to obtain money, property or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities; ...

3. "At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection." Bankruptcy Rule 4005. The standard of proof which the plaintiff must meet, in the case of subsections demanding a showing of fraud or fraudulent conduct, is the demanding "clear and convincing evidence" standard. *In re Garcia*, 88 B.R. 695, 703 (Bankr.E.D.Pa.1988); and *In re Somerville*, 73 B.R. 826, 834 (Bankr.E.D.Pa.1987). The standard of proof in reference to subsections not demanding proof of fraud or fraudulent conduct may be only the "preponderance of the evidence" standard. *Id. But see In re Montgomery*, 86 B.R. 948, 955 (Bankr.N.D.Ind.1988) (standard of proof required as to any objections to discharge is the "clear and convincing evidence" standard).

4. The objections to discharge based on § 727(a)(2)(B) require a showing that the Debtor displayed an "intent" to hinder, delay, or "defraud" creditors. The objections based on § 727(a)(4)(A) and (C) require a finding that the debtor acted "knowingly and fraudulently." Such objections, requiring findings of malicious "intent" and "fraud," would appear to have to be proven by "clear and convincing evidence."

The Plaintiff claims that the Debtor violated § 727(a)(4)(A) by failing to list the Wildwood condominium on his Schedules. While we agree that property owned by a debtor by the entireties with a non-debtor spouse is property of the debtor's estate, *see In re Ward*, 837 F.2d 124, 125–26 (3rd Cir.1988); *Napotnik v. Equibank*, 679 F.2d 316, 318 (3rd Cir.1982); and *In re DeMary*, 1988 WL 87730 (Bankr.E.D.Pa. Aug. 12, 1988), we refused to find that the Plaintiff met its burden of proving that the failure to make this disclosure was fraudulent by the requisite "clear and convincing evidence" standard. Cohen failed to list this property, though apparently aware of it, and the Trustee has not seen fit to amend the Debtor's Schedules to add it. *See In re Woerner*, 66 B.R. 964, 972–75 (Bankr.E.D.Pa.1986), *aff'd*, C.A. No. 86–7324 (E.D.Pa. April 28, 1987) (omissions from Schedules justify denial of discharge only if they are material and not made in good faith).

The Plaintiff alleges that the Debtor violated § 727(a)(4)(C) by moving this court to approve a sale to RWC without disclosing the self-serving "side" deals which he and RWC made. We find that, since the Plaintiff failed to spread out any evidence on this record of the details of the transaction between RWC, the Debtor and Gulph at trial, it has failed to meet the standard of proving same by the "clear and convincing evidence" standard.

Finally, the Plaintiff claims that the Debtor violated § 727(a)(2)(B) by failing to disclose the disposition of the $71,529.66. While we believe that this action of the Debtor supports denial of his discharge on the basis of § 727(a)(3) and (a)(5), we are unwilling to base denial of a discharge on the basis of these facts on § 727(a)(2)(B). *Compare Somerville*, 73 B.R. at 834 (discharge denied on the basis of § 727(a)(3) and (a)(4), but not on the basis of § 727(a)(2)). The record suggests that the Debtor's failure to disclose this information may be equally as attributable to bullheadedness as to an intent to hinder, delay, or defraud any creditors.

Therefore, we decline to grant the Plaintiff's objections on these grounds.

5. However, the Debtor's inability and/or refusal to provide any record of his

disposal of over $71,000 which came into his possession post-petition does reflect a failure to "keep or preserve any recorded information, ... from which [his] financial condition and business transactions might be ascertained, ..." in violation of § 727(a)(3). Also, the same conduct supports the conclusion that the Debtor "failed to explain satisfactorily, ... any loss of assets ...," in violation of § 727(a)(5).

■ There is no requirement that a debtor must act fraudulently or intentionally in order for the plaintiff to sustain objections based upon § 727(a)(3) or (a)(5). *See Koufman v. Sheinwald*, 83 F.2d 977, 979 (1st Cir.1936); *In re Underhill*, 82 F.2d 258, 259 (2d Cir.), *cert. denied*, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936); and *In re Rusnak*, 110 B.R. 771, 775–76 (Bankr.W. D.Pa.1990). The duty of disclosure is a basic prerequisite to obtaining a discharge in any bankruptcy. *See, e.g., In re Hargis*, 50 B.R. 698, 700 n. 7 (Bankr.W.D.Ky.1985). It was especially incumbent upon the Debtor here to keep and preserve records of his post-petition dealings with Kirsch and Clarke, because the unaccounted funds were received by the Debtor in transactions which were violative of 11 U.S.C. § 364(b), and were received while the Debtor was serving in the capacity as a debtor-in-possession, in which capacity he was imposed with fiduciary duties on behalf of his creditors. *See Wolf v. Weinstein*, 372 U.S. 633, 643–45, 649, 83 S.Ct. 969, 976–77, 979, 10 L.Ed.2d 33 (1963); *In re Woodson*, 839 F.2d 610, 614 (9th Cir.1988); and *In re Crouse Group, Inc.*, 75 B.R. 553, 557–58 (Bankr.E.D.Pa.1987).

While the Debtor was not obliged to keep any formal books of account of these transactions, *compare Rusnak, supra*, 110 B.R. at 776, we conclude that it is reasonable to impose upon him the obligation to have kept and retained some sort of records of the expenditure of such a large sum of money over such a short and recent time-period. We conclude that the failure to have done so requires denial of his discharge pursuant to § 727(a)(3). *Accord, In re Trogdon*, 111 B.R. 655, 658–59 (Bankr. N.D.Ohio 1990) (failure of debtor to keep records documenting disposition of a single $4,500 payment justifies denial of discharge). *See also, e.g., Rusnak*, 110 B.R. at 776; *In re Anglin*, 89 B.R. 35, 36 (Bankr.W.D.Ark.1988); *Somerville, supra*, 73 B.R. at 834–35; *In re Schultz*, 71 B.R. 711, 716–17 (Bankr.E.D.Pa.1987); *In re Switzer*, 55 B.R. 991, 997–98 (Bankr.S.D.N. Y.1986); and *In re Ailetcher*, 49 B.R. 681, 685 (Bankr.D.Haw.1985). Assuming *arguendo* that a § 727(a)(3) objection must be proven by the "clear and convincing evidence" standard, we find the evidence supporting this objection to be overwhelming, and therefore sufficient to satisfy even that standard.

Moreover, the Debtor here was also unable to provide any satisfactory explanation, even orally, as to what was done with over $71,000 of unaccounted funds in an 11–month period. Despite the size of the Debtor's family, there is no basis on which we can conclude that expenditures of $6,500 monthly, when no expenditures for shelter appear necessary because his home was apparently owned outright by his spouse, was reasonable. Given the Debtor's evasiveness in the face of the court's providing him a full opportunity to explain what he did with those large sums, we are forced to conclude that it is very likely that considerable sums were expended by the Debtor in doubtful schemes to attempt to recover Rebel Hill, in which he has displayed a distinct propensity to engage. Such expenditures would have been totally unauthorized without court approval under 11 U.S.C. § 363(b)(1).

We therefore conclude that the Plaintiff has proven the validity of its objection to the Debtor's discharge on the basis of § 727(a)(5). *Accord, Trogdon, supra*, 111 B.R. at 659 (insufficient explanation of disposition of $4,500 justifies denial of discharge under § 727(a)(5)). *See also, e.g., In re Kent*, 92 B.R. 540, 544 (Bankr.S.D. Fla.1988); *Anglin, supra*, 89 B.R. at 36; *Schultz, supra*, 71 B.R. at 717; *Switzer, supra*, 55 B.R. at 998; *In re Sklarin*, 69 B.R. 949, 952–53 (Bankr.S.D.Fla.1987); and *Ailetcher, supra*, 49 B.R. at 686. The Debtor's complete failure to offer any logical explanation for such a substantial ex-

penditure of funds in such a short time provides evidence sufficient to meet the "clear and convincing evidence" standard, assuming *arguendo* that this is necessary.

■ 6. The Debtor's refusal to supply any of his business or personal records to the Trustee in his case provides an alternative factual basis upon which the Debtor's discharge must be denied. We credit fully the disinterested testimony of the Trustee that the Debtor has recited varying and conflicting reasons for not presenting any of his records to the Trustee, which is indicative of the Debtor's propensity for fabrication. Initially, the records were claimed to be available, but situated elsewhere, and hence to be supplied to the Trustee by the Debtor shortly thereafter. However, the time for supplying the records never arrived despite the Trustee's repeated requests.

The Debtor now appears to suggest that he has no business records, because most of them were seized by the Plaintiff when it took control of Rebel Hill. However, this recitation would not explain the Debtor's failure to turn over to the Trustee records of his secretive post-petition dealings with, *inter alia,* Kirsch and Clarke, with which the Plaintiff certainly had no connection. The fact that the Plaintiff recovered a volume of receipts and records in depositions of the Debtor and Kirsch and Clarke is positive proof that such records existed. The Debtor was obliged to turn these records over to the Trustee directly, rather than requiring the Trustee to resort to obtaining same from the Plaintiff, who extricated same from Kirsch, Clarke, and the Debtor only through the medium of extensive depositions. We therefore conclude, without any difficulty, that the Debtor improperly withheld from his Trustee, the quintessential officer of his estate, "recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs," in violation of § 727(a)(4)(D).

We recognize that the Plaintiff was obliged to show that the Debtor acted "knowingly and fraudulently" in withholding information from the Trustee in order to succeed on any objections based on § 727(a)(4)(D). However, requisite intent to act "knowingly and fraudulently" "may be established by circumstantial evidence, or by inferences drawn from a course of conduct." *In re Hadley,* 70 B.R. 51, 53 (Bankr.D.Kan.1987). The Debtor's evasive conduct evidenced by his constant changes of his explanations as to why he failed to supply records to the Trustee upon request and his persistent refusal to supply any information whatsoever to the Trustee are circumstances sufficient for us to infer that the Debtor has acted both knowingly and fraudulently in refusing to cooperate with the Trustee.

Therefore, we conclude that the Debtor's discharge should also be denied on the basis of § 727(a)(4)(D). *See In re Chimento,* 43 B.R. 401, 403 (Bankr.N.D.Ohio 1984).

7. The Plaintiff is entitled to a determination by this court that the discharge of the Debtor must be denied on the basis of § 727(a)(3), (a)(4)(D), and (a)(5).